kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LISA PATRICE GROSS,          )
                                )
                 Plaintiff,     )
                                )
     vs.                      )
                                )   Case No. 06-2452-JAR
GENERAL MOTORS         )
CORPORATION,          )
                                )
               Defendant.    )
_____)

## MEMORANDUM AND ORDER

The Court now considers defendant General Motors Corporation's ("GM") Motion for

Sanctions (Doc. 108).  GM seeks sanctions, including dismissal pursuant to Fed. R. Civ. P. 37(b)

and 41(b).  For the reasons stated in detail below, GM's motion is granted and this action is

dismissed with prejudice.

**Background**

Plaintiff Lisa Gross initiated this suit on October 18, 2006.  She claimed that GM had

discriminated against her in violation of Title VII of the Civil Rights Act of 1964 and in

violation of the Americans With Disabilities Act ("ADA").  Specifically, she claimed that GM

failed to accommodate her disability, treated her differently from similarly situated employees,

terminated her in retaliation for her requesting leave, and retaliated against her for requesting

accommodations for her disability (Doc. 1)  Additionally, she filed a Motion to Proceed in

Forma Pauperis (Doc. 2) and a Motion to Appoint Counsel (Doc. 3).  Her motion to proceed in

forma pauperis was granted but her motion for appointment of an attorney was denied (Doc. 5).

Thereafter, plaintiff filed a Motion for Reconsideration of the Court's Order denying

appointment of counsel (Doc. 6), which was granted (Doc. 12).  Magistrate Judge Waxse appointed attorney Mark Meyer to plaintiff's case.

On February 25, 2007, plaintiff filed her amended complaint through her attorney.  In it, she claimed sexual harassment and hostile work environment, retaliation for reporting allegations of sexual harassment and for requesting accommodations for her disability, and failure of GM to provide accommodations for her alleged bipolar disorder.  On September 6, 2007, GM filed its motion for summary judgment (Doc. 38), which was granted in part and denied in part (Doc.44).

The Court granted summary judgment with respect to plaintiff's (1) hostile work environment claim; (2) retaliation for leaving the assembly line claim; and (3) discrimination under the ADA claim.  The Court, however, denied summary judgment, finding that there was a genuine issue of material fact as to whether plaintiff was retaliated against for requesting accommodations for her alleged disability.

Subsequently, plaintiff moved to withdraw her appointed counsel (Doc. 50).  That motion was granted on March 25, 2008.  Plaintiff continued her action pro se for five days before requesting appointment of another attorney.  She filed a motion requesting the Court forward her documents (Doc. 54), a motion to order her prior attorney Mark Meyer to forward her the case file (Doc. 55), an email motion requesting appointment of counsel (Doc. 57), and a motion for leave to restate or amend her claim (Doc. 58).  On May 6, 2008, the Court appointed attorney Michael Francis (Doc. 60).

After receiving notice of his appointment on May 6, 2008, Francis contacted plaintiff by email later that day, explaining that he had not yet reviewed the complaint, discovery, or

depositions in plaintiff's case.  Francis stated that he would probably file a motion to continue

the June 2006 trial date, because he had another trial starting around that time period and that he

feared he would not be prepared for trial (Doc. 61).  Later that month, plaintiff, acting on her

own behalf, filed a motion for the Court to withdraw her second appointed counsel (Doc. 64).  In

her motion, plaintiff claims that she contacted Francis on a number of occasions and he failed to

give her any direction or advice.  "It has been over 20 days since Mr. Francis took on this case

and yet I am still [sic] to get any guidance or advise from him . . . .  I believe Mr. Francis is

wasting time."  Plaintiff also claimed that it was a burden to meet with her attorney to discuss the

case.  In response to plaintiff's motion to withdraw, Francis stated that he had not reviewed the

entire case file because plaintiff had not turned over the case file, and that he was hesitant in

stating an opinion about the case (Doc. 66).

On June 12, 2008, the Court held a telephone conference[1] to discuss plaintiff's motions to

withdraw counsel and to restate her claims.  Francis explained that he had not received the

complete record from plaintiff.[2]  In response, plaintiff stated that she had not turned over the

entire case file because she did not trust her attorney.  The Court told plaintiff that her attorney

could not give her any advice until he received the entire case file.  The Court also stressed that

the Court did not frequently appoint counsel in a civil action; and that it was indeed a rarity for

the Court to entertain a withdrawal of the appointed counsel and appointment of a new counsel.

Nonetheless,  plaintiff disregarded the Court's warning.  Even after the Court's colloquy,

---

[1]During the telephone conference the Court denied plaintiff's motion requesting the Court forward her
documents (Doc. 54) and her motion to order her prior attorney Mark Meyer to forward her the case file (Doc. 55).

[2]The Court also notes that it sent an email to plaintiff's former attorney inquiring as to whether her case file
was forwarded.  Mr. Meyer stated that it was.

plaintiff insisted that she did not need her attorney.  As a result, plaintiff's motion to withdraw her counsel was granted.  The Court then denied plaintiff's motion to restate her claims that were dismissed on summary judgment.[3]

Also during the telephone conference, the Court ruled on GM's motion to compel discovery of plaintiff's medical records.  GM stated that it had received confirmation from plaintiff on August 2, 2007, that her medical records were available, and indeed, did receive some preliminary progress sheets discussing plaintiff's medical history.  GM also contacted plaintiff's former attorney, Meyer, who, while representing plaintiff, had agreed that plaintiff's medical records were relevant and would be turned over.  Another pretrial conference was held on August 27, 2007, where plaintiff again agreed to provide her remaining medical records.  But again, the records were not provided.  On September 1, 2007, GM forwarded a subpoena to plaintiff's medical provider requesting disclosure of her medical records.  The provider explained that plaintiff had not consented to such disclosure and that without her consent it would not turn over her medical records.

Pending its motion for summary judgment, GM and plaintiff decided not to pursue GM's discovery of her medical records.  After the Court ruled on summary judgment, plaintiff terminated Meyer and refused to consent to the disclosure of her records.  On June 12, 2008, after hearing GM's arguments, the Court granted its motion to compel plaintiff to release her medical records. The Court ordered plaintiff to contact her provider on June 12 or 13, 2008, and consent to the release of her records.

---

[3]In addition to her motion to restate her claims, plaintiff filed a number of motions requesting either to start the process anew or for judgment.  Additionally, she filed two motions (Docs. 89, 97) for "reconsideration" of the Court's summary judgment order, which were denied.

On June 26, 2008, plaintiff filed a motion to withdraw her request for a jury trial.  A few days later, GM filed its current motion for sanctions, including dismissal.  On July 2, 2008, the Court held another telephone conference with the parties, to hear plaintiff's motion to withdraw her jury request and GM's motion for sanctions.  Plaintiff had not yet filed a written response, so the Court told plaintiff that the Court would rule on the motion after plaintiff had an opportunity to respond in writing.  After reviewing plaintiff's right to a jury trial and explaining to her the consequences of her motion, the Court granted plaintiff's request to withdraw her request for a jury trial.  Additionally, the Court ordered plaintiff to file a response to GM's motion for sanctions, which she did on that same day.

In her response, plaintiff explained that "THE DEFENDANT IS LYING!!! through its counsel."  She claimed that she did not disobey the Court's order requiring her to consent to the distribution of her medical records to GM.  She stated that GM's motion was essentially a request for the Court to break the law because GM moved the Court to compel her to turn over medical records that are "irrelevant."  She also requested that the Court prevent GM from filing any more motions or requests, and order it to settle the case with plaintiff for $25 million in order to stop wasting the Court's time.  In an addition to her motion, plaintiff states that she "rests" having "no more argument."

**Sanctions Under Fed. R. Civ. P 37(b) and 41(b)**

Rule 37(b) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 37(a)," the Court may dismiss the action in whole or in part.[4]  Rule 41(b) states that "[i]f a plaintiff fails to prosecute or to comply with these rules or a

---

[4]Fed. R. Civ. P. 37(b)(A)(v).

court order, a defendant may move to dismiss the action."[5]  Whether to dismiss an action for disobeying a discovery order or for failure to prosecute is within the Court's discretion.[6] Dismissal is an extreme remedy and is only appropriate in cases of willful misconduct[7] or where a lesser sanction is not available.[8]  Because dismissal with prejudice forecloses the litigant's access to the Court, dismissal is usually a weapon of last resort.[9]

When considering dismissal under Rules 37 and 41, the Court should consider a list of non-exhaustive factors.[10]  Those factors include "(1) the degree of actual prejudice to the opposing party, (2) the degree of interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was warned in advance that dismissal was a likely sanction, and (5) whether a lesser sanction would be effective."[11]  When analyzing these factors, the Court is aware that they are not equiponderant.[12]

Considering the first factor, it is apparent that GM has suffered prejudice in preparing for trial.  GM requested the medical records over one year ago and has still not received the information.  It is obvious that GM has suffered prejudice as the evidence it seeks is essential to

---

[5]Fed. R. Civ. P. 41(b).

[6]*Lafleur v. Ten Help*, 342 F.3d 1145, 1151 (10th Cir. 2003).

[7]*Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

[8]*Lafleur*, 342 F.3d at 1151.

[9]*Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005).

[10]*See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143-44 (10th Cir. 2007) (utilizing the *Ehrenhaus* factors in a Rule 41 scenario); *Proctor & Gamble*, 427 F.3d at 738 (using the *Ehrenhaus* factors in a Rule 37 context).

[11]*Lafleur*, 342 F.3d at 1151 (citing *Gripe v. City of Enid*, 312 F.3d 1184, 1188 (10th Cir. 2002)).

[12]*Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

its defense and relevant to plaintiff's claim, as this Court noted during the telephone conference, and as plaintiff's former attorney acknowledged.[13]  Though GM agreed with plaintiff's attorney that plaintiff could forestall turning over the information until after the summary judgment ruling, GM has still suffered prejudice as the summary judgment ruling was rendered on February 4, 2008, some five months ago.  And with trial set for July 22, 2008, less than three weeks from the filing of GM's motion, it is evident that GM has suffered prejudice in preparing its case.

Not only is GM prejudiced because it has not received the medical records, it has had to contend with mounting attorney's fees in prosecuting this claim after the summary judgment ruling; it has had to prepare for two telephone conferences, prepare motions to compel disclosure, as well as reply to plaintiff's many responses and motions in opposition.  Not to mention, GM has also had to file responses to plaintiff's many motions seeking to start the process anew and for the Court to reconsider its summary judgment rulings.[14]

The second factor is the degree of interference with the judicial process.  Here, plaintiff, by willfully disobeying the Court's orders, "flouted the court's authority."[15]  Plaintiff's actions not only prohibited GM from effectively preparing its defense, but also prevented the court from

---

[13]*See Ecclesiastes 9:10-11-12, Inc.*, 497 F.3d at 1145 (finding prejudice to defendant where plaintiff failed to be deposed on an issue that was essential to the claims).

[14]*See Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (finding prejudice to movant where plaintiffs caused delay, failed to show for depositions, failed to show for pretrial conference, resulting in an accumulation of attorney's fees for the opposition).

[15]*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (reasoning that ignoring court orders without suffering the consequences would inhibit the court from administering justice).

orderly fashioning its docket, and has wasted judicial resources.[16]  In this case, the Court has appointed counsel for plaintiff twice, dealt with plaintiff's repeated motions to essentially begin the process anew, and scheduled conferences in order to warn plaintiff of the potential consequences of her actions.[17]

A litigant's culpability is the third factor.  Here, GM has not received any medical records since the summary judgment order was rendered five months ago.  Furthermore, plaintiff has no one to blame but herself.  GM states that it has contacted her medical provider on a number of occasions, only to be told that plaintiff has failed to sign a release granting the medical provider the authority to release the records.  In fact, when confronted by the Court during the June 12 telephone conference, plaintiff contended that the documents were not relevant.   Additionally, plaintiff cannot blame her attorneys for such failure to disclose because of any acts and omissions of counsel are attributable to the client.[18]  In any event, plaintiff's first attorney conceded that the medical records were relevant and that they should be turned over almost one year ago; and plaintiff's second counsel never progressed that far, for plaintiff refused to turn over her case file to him.  "It is plaintiff's acts, not those of [her] counsel, which are at issue here."[19]

---

[16]*Lafleur*, 342 F.3d at 1152 (noting that the magistrate judge's attempt to "hold hearings in a futile attempt to accomplish discovery" interfered with the judicial process).

[17]Not only did the Court deal with what plaintiff filed on the electronic system, it had to reconcile her many emails with her motions, contact GM so as not to take part in ex parte communications, and inform GM of the numerous paper motions, including a taped recording that was mailed to Chambers.  Moreover, on the day that the Court held a second telephone conference and granted her motion to "withdraw request for a jury trial," the Court received plaintiff's response to GM's motion for sanctions, which stated that plaintiff would like to withdraw her motion to "withdraw request for a jury trial."

[18]*Lafleur*, 342 F.3d at 1152.

[19]*Ehrenhaus*, 965 F.2d at 921.

Considering the fourth factor, the Court is aware that plaintiff was not explicitly warned that dismissal was a sanction. But, under the *Ehrenhaus* factors, notice is not a prerequisite for dismissal[20] and some factors will often take on more importance than others.[21] Indeed, in some instances, a prior warning is not necessary for a court to dismiss an action with prejudice.[22] The Court finds that this situation is just such an instance. Nonetheless, plaintiff was placed on notice that her action may be dismissed. On July 2, 2008, during the telephone conference, the Court stated that "General Motors [had] justification to . . . ask that the case be dismissed." And because constructive notice of dismissal is enough to satisfy the notice prong of the *Ehrenhaus* factors,[23] the Court is satisfied that plaintiff was on notice that dismissal with prejudice was a possibility.

Finally, the Court considers the efficacy of lesser sanctions. Realizing that dismissal with prejudice is a severe sanction, the Court nonetheless believes that no other sanction will be effective.[24] The plaintiff repeatedly ignored the Court's orders, including the Court's order on her many motions to "Restate Claims," and the Court's explicit order by telephone conference to sign a release for her medical records.[25] Furthermore, dismissal with prejudice in this case

---

[20]*See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149 (10th Cir. 2007).

[21]*Ehrenhaus*, 965 F.2d at 922.

[22]*See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir. 2005) (dismissing an action without prior warning where plaintiff perjured himself during discovery); *Archibeque v. Atchison, Topeka & Sante Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995) (dismissing action without notice to plaintiff that dismissal was imminent).

[23]*See Ecclesiastes 9:10-11-12, Inc.*, 497 F.3d at 1150 (stating that though the district court did not promise dismissal, "it certainly left open, if not highlighted, such a possibility." ).

[24]*See Hobratschk v. Perretta*, 210 F.3d 389, No. 99-1293, 2000 WL 313530 at *2 (10th Cir. Mar. 28, 2008) (stating that a district court need not impose lesser sanctions before dismissal with prejudice).

[25]*See Jones v. Thompson*, 996 F.2d 261, 265-66 (10th Cir. 1993) (stating that lesser sanctions would not be effective where plaintiff repeatedly ignored court orders).

serves a couple purposes; "[i]t penalizes the party whose conduct warrants the sanction and discourages 'those who might be tempted to such conduct in the absence of such a deterrent.'"[26]

Consequently, having addressed the *Ehrenhaus* factors, the Court is convinced that dismissal with prejudice under Fed. R. Civ. P. 37(b) and 41(b) is appropriate.[27]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant General Motors Corporation's Motion for Sanctions, Including Dismissal (Doc. 108) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated this   22nd   day of July 2008

  S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

Memorandum and Order in *Gross v. General Motors Corporation*, 06-2452-JAR.

---

[26]*Jones*, 996 F.2d at 265-66 (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

[27]*See generally Ashby v. Mckenna*, 110 F. App'x 86, 87-88 (10th Cir. 2004) (finding that because plaintiff "unduly hampered reasonable efforts to obtain his medical records," dismissal with prejudice was appropriate).